DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant, Roderick L. Tate, appeals from the decision of the Summit County Court of Common Pleas finding him guilty of failure to comply with an order or signal of police officer, grand theft, assault, driving under FRA suspension and resisting arrest. We affirm.
 {¶ 2} Defendant was indicted on July 18, 2003, on the following six counts: failure to comply with an order or signal of police officer in violation of R.C. 2921.331(B), a felony in the third degree; failure to comply with an order or signal of police officer in violation of R.C.2921.331(B), a felony in the fourth degree; grand theft in violation of R.C. 2913.02(A)(1), a felony in the fourth degree; assault in violation of R.C. 2903.13(A), a felony in the fourth degree, driving under FRA suspension in violation of R.C. 4511.192, a misdemeanor in the first degree; and resisting arrest in violation of R.C. 2921.33(A), a misdemeanor in the second degree.[1]
 {¶ 3} Arraignments were conducted on July 30, 2003, and December 10, 2003, and Defendant entered pleas of not guilty to all seven counts. On December 16, 2003, Defendant motioned to change his pleas to guilty on the seven counts. Prior to the change, Defendant moved for his court-appointed attorney to be removed from his case because he claimed his attorney had not taken an interest in his case. The court made several inquires to Defendant on whether there was anything his attorney failed to complete, and Defendant said there was not. He admitted he was satisfied with the work his attorney had done, and the trial court denied the motion for new counsel. The trial court accepted Defendant's guilty plea after addressing him in accordance with Crim.R. 11, and ordered a presentence investigation. Defendant subsequently asked to withdraw his guilty pleas, which the trial court granted. After withdrawing his guilty plea, Defendant insisted that he did not want to continue with his present attorney and stated that he had retained new counsel. The other attorney was not present, and Defendant would not give the court any information about him. The court denied Defendant's motion for new counsel and commenced the trial.
 {¶ 4} During voir dire, Defendant continually interrupted the proceedings with verbal outbursts and his refusal to remain seated. Defendant repeatedly stated he did not want to go forward with the proceedings, continued to stand and interrupt the court, and was adamant that he did not want the attorney who was present to represent him. After numerous warnings to conduct himself appropriately, the court then revoked Defendant's bond and placed him in custody. Defendant was shackled and removed from the courtroom in the presence of the jury. Outside the presence of the jury, the court overruled a defense motion for a mistrial. The court then told Defendant, still outside the presence of the jury, that if he wanted to return to the courtroom and be present for his trial, he was to have no further outbursts. Defendant said he did not want to be present, and the court then moved the proceedings into an adjoining courtroom which was equipped to allow Defendant to see and hear the proceedings electronically, as well enable him to electronically communicate with his attorney. Defendant's renewed motion for a mistrial was again overruled. The jury was also instructed, on two separate occasions, that they were not to consider any of Defendant's actions as evidence in any way.
 {¶ 5} After his removal, Defendant requested that he be allowed to replead guilty and receive the State's previously-offered prison sentence of three and one-half years. The court denied the request, stating that due to Defendant's previous plea withdrawal, the court could not be assured that this plea was voluntarily made. Defendant then renewed his assertion not to be present in the courtroom.
 {¶ 6} The jury returned a guilty verdict on the six aforementioned counts on December 17, 2003. On December 19, 2003, Defendant was sentenced to a total of five years imprisonment: four years on the first count, one year on the second count, one year on the third count, one year on the fourth count, six months on the fifth count, and sixty days on the sixth count. The sentences were ordered to run concurrent to the four-year term on count one, except the one-year term for count four, which was to run consecutively to the other sentences. Defendant timely appealed, asserting five assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court abused its discretion to the prejudice of [Defendant] in denying defense motion for mistrial, after the court ordered [Defendant] shackled and removed from the courtroom in front of the entire venire panel."
 {¶ 7} In his first assignment of error, Defendant alleges that the trial court erred when it twice denied his motion for a mistrial after ordering him to be shackled and removed from the courtroom in front of the jury panel. We disagree.
 {¶ 8} When considering a motion for mistrial, the trial court must determine whether the substantial rights of the accused have been adversely affected. State v. Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, at 4, citing State v. Nichols (1993), 85 Ohio App.3d 65, 69. A court may grant a mistrial when a fair trial is no longer possible.State v. Franklin (1991), 62 Ohio St.3d 118, 127. Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion. State v. Glover (1988), 35 Ohio St.3d 18, 20. An abuse of discretion is more than a mere error of law or judgment and implies that the court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 9} Although no individual should be tried while shackled, absent unusual circumstances, the shackling of a defendant is left to the sound discretion of the trial court. State v. Richey (1992), 64 Ohio St.3d 353,358. In some cases, shackling is necessary under extreme circumstances to protect the safe, reasonable and orderly progress of the trial. State v.Morgan (1992), 84 Ohio App.3d 229, 232, citing State v. Carter
(1977), 53 Ohio App.2d 125. It is also well-established that a defendant should not be presented to the jury in restraints, as this may undermine the presumption of innocence. Morgan, 84 Ohio App.3d at 231
(citations omitted). Courts have recognized that in situations where the defendant is seen in shackles for a short period of time in the courtroom, the degree of prejudice to the defendant in this situation is certainly much less than in the situation where the accused sits throughout his trial before the jury in shackles. Kennedy v. Cardwell
(C.A.6 1973), 487 F.2d 101, 109.
 {¶ 10} In this case, the trial court record reflects that Defendant's continued course of disruptive conduct is what prompted the court to make the decision to have him shackled and placed into custody. Defendant interrupted the court in front of the jury over a dozen times, and the court frequently reminded him to remain seated and to refrain from making any other outbursts. After ordering Defendant shackled and removed from the courtroom, the judge stated, "The record will reflect that Mr. Tate is refusing to comply with the orders of the Court, refusing to remain seated, is continually disrupting the proceedings, and he's been removed for just a few moments during voir dire." Defendant was then given another opportunity to return to the courtroom, which he refused. The court subsequently informed the venire panel on two separate occasions that they were to disregard Defendant's conduct because it was not evidence in the case.
 {¶ 11} As Defendant was only shackled in order to be led out of the courtroom, thereby resulting in the jury panel being briefly exposed to Defendant in this type of custody, this Court does not believe Defendant was unduly prejudiced. Defendant was not presented to the jury in restraints, and he was only restrained after he had continually interrupted the court. Although the jury was not excused prior to Defendant being restrained, this Court notes that certain safety precautions must be taken in situations when, due to the layout of the courtroom, jurors would be in close proximity to an unrestrained defendant as they were exiting the courtroom. The trial court did not err in denying Defendant's motion for mistrial, and we overrule Defendant's first assignment of error.
 ASSIGNMENT OF ERROR II
"The trial court abused its discretion by refusing to accept [Defendant's] guilty plea to the indictment, and compelling him to proceed to trial."
 {¶ 12} Defendant asserts the trial court erred when it refused to accept his guilty plea to the charges in the indictment for a pre-sentence investigation and a recommendation from the prosecutor for incarceration of three and one-half (3½) years. We disagree.
 {¶ 13} It is well-established that the decision whether or not to accept a plea bargain is within the sound discretion of the trial court.Akron v. Ragsdale (1978), 61 Ohio App.2d 107, 109. When the trial court rejects a recommended plea bargain, it should state reasons for its decision. Id. In State v. Esposito (Dec. 30, 1994), 9th Dist. No. 2337-M, at 8, this Court held that it is within the discretion of the trial court to accept or refuse a defendant's guilty plea. Furthermore, a defendant has no absolute right under the Constitution to have his guilty plea accepted. Id. Nevertheless, it may be an abuse of discretion for a trial court to refuse to accept a guilty plea where it was voluntarily and intelligently made, and where the defendant was able to articulate cogent and consistent reasons for his plea. State v. Jackson (1980),68 Ohio App.2d 35, 37-38. In order to be reversible error, however, such an abuse of discretion must have been prejudicial to the defendant's case. Esposito at 8-9.
 {¶ 14} Here, Defendant entered a guilty plea on the morning of his trial, which the trial court accepted after addressing him in accordance with Crim.R. 11. Later that same morning, Defendant moved to withdraw his guilty plea, which the trial court granted. During voir dire, Defendant informed his attorney that he wanted to once again enter a guilty plea and accept the prosecutor's offer of three and one-half years incarceration. The trial court refused to accept Defendant's guilty plea, stating, "I cannot find that he is knowingly, voluntarily and intelligently entering a plea when he has already withdrawn a plea one time." We believe there was no abuse of discretion on the part of the trial court in its refusal to accept Defendant's second attempt at pleading guilty to the charges before him, and overrule Defendant's second assignment of error.
 ASSIGNMENT OF ERROR III
"The trial court erroneously excluded [Defendant] from the courtroom for almost the entire duration of his trial, including the entire evidentiary phase of trial, in violation of his Sixth Amendment right of face-to-face confrontation with the witnesses against him."
 {¶ 15} In his third assignment of error, Defendant argues the trial court committed Constitutional error by excluding him from the courtroom during his jury trial. Defendant believes that his exclusion from the courtroom amounted to a Sixth Amendment violation and, therefore, his conviction and sentence should be reversed. We disagree.
 {¶ 16} The record indicates that neither Defendant nor his counsel objected when Defendant was removed from the courtroom, therefore this Court concludes Defendant has waived this issue on appeal. "Issues not raised and tried in the trial court cannot be raise for the first time on appeal." Holman v. Grandview Hosp. Med. Ctr. (1987),37 Ohio App.3d 151, 157. Defendant's failure to raise this issue before the trial court operates as a waiver of his right to assert it for the first time on appeal. Hypabyssal, Ltd. v. Akron Hous. Appeals Bd.
(Nov. 22, 2000), 9th Dist. No. 20000, at 5, citing State ex rel. Zollnerv. Indus. Comm. (1993), 66 Ohio St.3d 276, 278. See App.R. 12(A)(2) and App.R. 16(A)(7). Therefore, we decline to address this argument and overrule Defendant's third assignment of error.
 ASSIGNMENT OF ERROR IV
"The trial court erred to the prejudice of [Defendant] in admitting hearsay testimony by a police witness concerning a dispatch call about the purported owner calling in to report the vehicle stolen."
 {¶ 17} In his fourth assignment of error, Defendant contends the trial court committed prejudicial error when it admitted hearsay testimony that the owner of the vehicle had called the police to report that her car was stolen. Defendant asserts that without said testimony, the State would not have established the essential element of lack of consent on the felony charge of grand theft at trial. This Court disagrees.
 {¶ 18} On July 10, 2003, at approximately 5:00 a.m., Akron police officers Brent Heller and Aaron Clark were on duty in a neighborhood on Rhodes Avenue, an area they normally patrolled. While driving north on Rhodes Avenue, the officers saw Defendant standing near the driver's side door of a vehicle parked on the street, and an unidentified man standing near the passenger's side. They recognized the vehicle as one that was routinely parked in that same spot, and one they had stopped for traffic violations two weeks earlier. The usual driver of the vehicle was a male, approximately 5'6", and the owner of the vehicle was the male's girlfriend, Jacqueline Travis. The officers noted that Defendant, who is approximately 6'2", was not the usual driver or owner of the car, and testified that he was "messing around" with the driver's side door.
 {¶ 19} According to testimony, Defendant got into the vehicle and "peel[ed] out" from the parking space without turning on the car's headlights approximately one to two minutes later. The officers followed Defendant and observed him as he proceeded to drive the car through a red light. It was at this point the police officers activated their police lights and pursued the car, which had stopped at an intersection. Defendant opened the door, looked at the police officers and then sped away. The police officers turned on their sirens, but Defendant did not stop the vehicle. The Defendant drove through a residential area on Beck Avenue, reaching speeds of 50 mph in a 25 mph zone, and, without braking, ran through a 4-way stop sign with a red flashing 4-way stoplight. Defendant then cut through a parking lot and hit a cement dip, causing the car to become airborne and hit a telephone pole before it landed and crashed into a parked vehicle. Defendant then got out of the vehicle, stumbled and ran through the lot and into a yard.
 {¶ 20} Officer Heller fired his TASER when he was approximately five feet from Defendant, but missed him. Officer Clark caught Defendant, who wrestled with him on the ground in his attempt to escape. Two officers arrived to help Officers Heller and Clark detain Defendant, who was continually punching Officer Clark. An inspection of the vehicle showed no keys in the vehicle, the center column under the steering wheel smashed, and a screwdriver located on the driver's side floorboard.
 {¶ 21} At trial, Officer Heller testified that after Defendant was arrested, a call came over the radio to the officers' sergeant that the owner of the vehicle had called police dispatch to report the vehicle stolen. The court overruled Defendant's objection, but subsequently sustained Defendant's objection to the State showing Officer Heller the vehicle's title and having him identify the listed owner of the vehicle. Defendant argues that the hearsay rule should have precluded Officer Heller's testimony about the dispatch call, and permitting such testimony resulted in prejudicial error to Defendant. After a review of the entire record, this Court finds that any prejudice that may have resulted from the admission of testimony about the dispatch call constitutes harmless error.
 {¶ 22} Crim.R. 52(A) addresses harmless error, stating that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find that an error in a criminal matter was harmless, this Court must find that the error was harmless beyond a reasonable doubt. Chapman v. California (1967),386 U.S. 18, 17 L.Ed.2d 705, paragraph two of the syllabus; State v.Lytle (1976), 48 Ohio St.2d 391, 403, vacated on other grounds in (1978), 438 U.S. 910, 57 L.Ed.2d 1154. This Court, however, may overlook an error where the properly admitted evidence comprises "overwhelming" proof of defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, 290, citing Harrington v. California (1969), 395 U.S. 250, 254. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992), 65 Ohio St.3d 483, 485, quoting Lytle,
48 Ohio St.2d at paragraph three of the syllabus. When determining whether the admission of evidence is harmless, therefore, this Court must find "there is no reasonable probability that the evidence may have contributed to the defendant's conviction." State v. Hardin, (Dec. 5, 2001), 9th Dist. No. 3203-M, citing State v. DeMarco (1987),31 Ohio St.3d 191, 195.
 {¶ 23} Additionally, this Court has previously held that the State does not need to prove who owned the car as long as it shows a wrongful taking from the possession of another. State v. Kelly (Feb. 16, 1984), 9th Dist. No. 11296, at 4. In Kelly, this Court stated:
"We have reviewed the evidence in this case and find ample evidence, from defendant's conduct and statements, of such a wrongful taking. Assuming, without deciding that the error was one of constitutional stature, we nevertheless find that it was harmless error beyond a reasonable doubt. United States v. Jacobson (1976), 536 F.2d 793; Statev. Williams (1983), 6 Ohio St.3d 281; and State v. Acre (1983),6 Ohio St.2d 140." Id.
 {¶ 24} The record reflects the State submitted additional evidence to establish Jacqueline Travis was the owner of the stolen vehicle. Officer Heller testified that the license plate of the vehicle in question was run through Mobile Date Terminal ("MDT"), which provided the owner's name, address and driving information as belonging to Jacqueline Travis. The totality of the properly admitted evidence, including Defendant's conduct before he entered the vehicle, his conduct while being pursued by the police, and his attempted flight from the police, tends to prove that Defendant stole the automobile at issue and constituted overwhelming evidence of Defendant's guilt. Having found that there is no reasonable probability that the evidence of Officer Heller hearing the police dispatch call regarding the stolen vehicle report contributed to his conviction, this Court overrules Defendant's fourth assignment of error.
 ASSIGNMENT OF ERROR V
"There was insufficient evidence to support the jury's verdicts, and [Defendant's] convictions were against the manifest weight of the evidence."
 {¶ 25} In his fifth assignment of error, Defendant maintains that his convictions were against the manifest weight of the evidence, and challenges the sufficiency of the evidence supporting the jury's verdict. We disagree.
 {¶ 26} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 27} Upon reviewing the record in the case at bar, we cannot say that Defendant's conviction is against the manifest weight of the evidence. The jury in this case had the opportunity to view the witnesses' testimony and judge their credibility. In a jury trial, matters of credibility of witnesses are primarily for the trier of fact; therefore, we must give deference to the jurors' judgment. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence proffered by the prosecution.State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See also, State v. Warren (1995), 106 Ohio App.3d 753, 760. In the case at bar, we believe the trier of fact did not lose its way in resolving the factual conflicts in the testimony and convicting Defendant of the charges against him.
 {¶ 28} Additionally, this court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. State v.Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citing Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its initial burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3.
 {¶ 29} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal under Crim.R. 29(A) if, after "[v]iewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) Jackson v. Virginia (1979),443 U.S. 307, 319, 61 L.Ed.2d 560.
 {¶ 30} In addressing the manifest weight of the evidence issue, we concluded that Defendant's convictions were not against the manifest weight of the evidence. Based on our previous finding that "a determination that [a] conviction is supported by the weight of the evidence [is] dispositive of the issue of sufficiency," we find that the motion for acquittal based on insufficient evidence is meritless. Statev. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Accordingly, the fifth assignment of error is overruled.
 {¶ 31} We overrule Defendant's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J., Batchelder, J. concur.
[1] Defendant was also charged with a seventh count of failure to comply with an order or signal of police officer, a felony in the third degree, following a supplemental indictment on December 4, 2003. The trial court dismissed this charge, and the jury returned a verdict on each of the first six counts.